**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>v.<br><br>Rafael Cruz-Ayon,<br><br>   Defendant.<br>_____ | No. CR 03-1096-PHX-SMM<br>CV 05-2576-PHX-SMM (BPV)<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Pursuant to the Court's order filed October 24, 2006, the Court held an evidentiary hearing on January 24, 2007 (the "Hearing"), on the sole issue of whether Defendant's lawyer rendered ineffective assistance of counsel by failing to file a notice of appeal.[1]  See Dkt. 60.

## **FACTUAL BACKGROUND**

On March 8, 2004, pursuant to a written Plea Agreement, Defendant pled guilty to Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Dkt. 23.)  Among other things, the parties stipulated that 4 kilograms of methamphetamine was readily provable as being in Defendant's possession for purposes of distribution and that the offense level under the Guidelines would be determined only as to this agreed amount. (Dkt. 33 at 2.) Defendant's guilty plea was conditioned upon the understanding that the maximum term he could receive was life imprisonment and the mandatory minimum

---

[1] Defendant was represented at the Hearing by court-appointed counsel, Atmore Baggot. See United States v. Duarte-Higareda, 68 F.3d 369 (9th Cir. 1995).

1  term was 10 years. (Id. at 1.) If the sentence imposed was consistent with the Plea Agreement,
2  Defendant agreed to waive "any right to appeal or collaterally attack any matter pertaining to
3  [his] prosecution and sentence." (Id. at 3.)
4        On October 8, 2004, Defendant was sentenced to a prison term of 135 months, the low
5  end of the Guidelines range for a level 33 offense and a level I criminal history. (Dkt. 46 at 19,
6  24-28.) At sentencing, Mr. Lopez raised the constitutionality of the Guidelines in light of
7  United States v. Detwiler, 338 F.Supp.2d 1166 (D. Or. 2004) (holding the Guidelines
8  unconstitutional as violating separation of powers), and requested that Defendant be permitted
9  to preserve the Separation of Powers Argument on appeal. (Dkt. 46 at 19-22.) After Defendant
10 and counsel for both parties agreed that Defendant had been sentenced in accordance with the
11 Plea Agreement, the Court ruled that he had knowingly and voluntarily waived "his right to take
12 an appeal or to collaterally attack this matter," with the exception of the Separation of Powers
13 Argument, which he was permitted to raise on appeal or by collateral attack. (Id. at 29-32.)
14 Judgment was entered on October 19, 2004. (Dkt. 34.) The time to file a notice of appeal
15 expired on October 30, 2004. See Fed.R.App.P. 4(b)(1)(A).
16       On February 10, 2005, Defendant filed a "MOTION: to withdraw the plea, or for breach
17 of contract, (plea agreement), or to reinforce the agreement." (Dkt. 36.) On February 22, 2005,
18 Defendant filed a "MOTION to take an appeal as of right." (Dkt. 38.) After the Government's
19 response (dkt. 39), Defendant filed a reply, attaching two letters from Mr. Lopez stating that
20 Defendant had waived his right to appeal. (Dkt. 40, Ex. 2.) On March 24, 2005, both motions
21 were denied without prejudice to Defendant filing a Motion under 28 U.S.C. §2255. (Dkt. 41.)
22       On August 25, 2005, Defendant filed the instant §2255 Motion, raising three claims for
23 relief, one of which included an Ineffective Assistance of Counsel claim (the "IAC claim")
24 based on Mr. Lopez's failure to file a notice of appeal. (Dkt. 47 at 5.)
25       On November 30, 2005, the Government responded to Defendant's Motion and
26 submitted an affidavit from Mr. Lopez denying that Defendant had directed him to file a notice
27 of appeal "from the date of sentencing or at any time within ten days from the date of entry of
28 his judgment." (Dkts. 53-54.) Defendant filed a reply stating that he "instructed Mr. Lopez to

file a notice of appeal at the time [he] was sentence [sic] and way before the 10 days frame expired, but Mr. Lopez never did even thoug[h] he said he was going to file it." (Dkt. 56 at 2.)

On January 24, 2007, this Court held an evidentiary hearing on the IAC claim to determine whether Defendant's assertion – that he told Mr. Lopez to file an appeal – is true. (Dkt. 60.) Only two witnesses testified at the Hearing, Defendant and Mr. Lopez.

**DISCUSSION**

**A.    Applicable Law: United States v. Sandoval-Lopez**

The law in the Ninth Circuit provides that, where a defendant asks his lawyer to appeal and his lawyer does not do so, even where a defendant has waived his right to appeal, the lawyer has provided ineffective assistance of counsel. United States v. Sandoval-Lopez, 409 F.3d 1193, 1196 (9th Cir. 2004). This is the law, "as contrary to common sense as it seems." Id. Relying on the Supreme Court's decision in Peguero v. United States, 526 U.S. 23 (1999), the Sandoval-Lopez court explained that "'when counsel fails to file a requested appeal, a defendant is entitled to resentencing and to an appeal without showing that his appeal would likely have had merit.'" Sandoval-Lopez, 409 F.3d at 1197 (citation omitted). Effectively, this amounts to saying "'it is ineffective assistance of counsel to refuse to file a notice of appeal when your client tells you to, even if doing so would be contrary to the plea agreement and harmful to your client,' but that is the law on filing a notice of appeal."[2]  Id.

Here, Defendant has not alleged that he merely expressed interest in appealing the judgment, but instead asserts that he directed Mr. Lopez to file a notice of appeal and Mr. Lopez failed to do so. See dkt. 56 at 2. If the Court finds Defendant to be credible on this issue, there has been ineffective assistance of counsel requiring the judgment to be vacated and reentered so that Defendant may timely file a notice of appeal. Sandoval-Lopez, 409 F.3d at 1198.

---

[2] In considering Sandoval-Lopez, it is important to distinguish the situation where an attorney is told to file an appeal from a situation where the defendant merely expresses interest in appealing the judgment. In the latter situation, the appropriate inquiry is whether the attorney should have consulted with the client about an appeal. See Roe v. Flores-Ortega, 528 U.S. 470, 486 (2000).

- 3 -

### B.     **Defendant's Testimony at the Hearing**

Defendant was born and raised in Mexico.  (Dkt. 45 at 4.)  He attended elementary school in Mexico (id.) and has never studied the American system of government.  Prior to being incarcerated, Defendant worked "in the fields," driving a tractor and irrigating crops.

After Defendant was arrested in October 2003, he was initially represented by counsel appointed under the Criminal Justice Act. (Dkt. 4.)  In November 2003, Defendant's family arranged for him to be represented by retained counsel, Mr. Lopez, an attorney residing in the State of Illinois, and local counsel Alex Navidad.  (Dkt. 9.)

Defendant testified that, before entering into the Plea Agreement, he met with Mr. Lopez twice, but was not satisfied with his representation.  Defendant claims that he wanted to be kept informed about the status of his case and Mr. Lopez failed to communicate with him. Notwithstanding these assertions, Defendant admitted knowing that he was facing a mandatory minimum sentence of ten years and that, if he had not pled guilty, the Government could have sought to obtain a superseding indictment adding a weapons possession charge against him.

On March 8, 2004, Defendant entered into a Plea Agreement based on Mr. Lopez's advice. (Dkt. 33.)  The record reflects that, at the change of plea hearing, Defendant admitted understanding his waiver of the right to appeal in exchange for certain concessions from the Government. (Dkt. 45 at 12-13, 17-18.)  Although the Plea Agreement was written in English, Defendant agreed that his attorney had translated it into Spanish for him and explained the provisions. (Id. at 5.)  In addition, Defendant represented to the Court that he understood his attorney's translation of the Plea Agreement, that his attorney was able to respond to his questions about it, and that he signed the document.  (Id.)  The record also reflects that, at sentencing, counsel for both parties and the Court had several discussions confirming that the Defendant waived his right to appeal.  (Dkt. 46 at 19-21, 28-32.)  At the instant Hearing, however, Defendant denied understanding that he had agreed to give up his appeal right and based this lack of understanding on Mr. Lopez's failure to communicate with him.  He also denied remembering any discussions at sentencing about his waiver of appellate rights. Defendant did remember, however, that the Court permitted him to appeal a single issue.

1 At the Hearing, Defendant testified that he was surprised by the sentence imposed
2 because it was not in accordance with the Plea Agreement. The record reflects, however,
3 Defendant's agreement at sentencing that the sentence imposed was in accordance with the Plea
4 Agreement. (Dkt. 46 at 27-29.)

5 Defendant testified that he did not know what to do when his sentence was imposed
6 because he had never gone through a similar "program." According to Defendant, immediately
7 after sentencing, when everyone had vacated the courtroom, he told Mr. Lopez, "I need you to
8 file my appeal," to which Mr. Lopez responded, "Okay. Call me." Defendant claims that he
9 called Mr. Lopez twice that same day, but Mr. Lopez never answered his telephone. Defendant
10 explained that Mr. Lopez understood his request to file an appeal because he speaks fluent
11 Spanish. Defendant does not know why Mr. Lopez failed to file the notice of appeal.

12 Defendant wanted to file an appeal because he failed to receive many of the benefits Mr.
13 Lopez told him he would get in exchange for pleading guilty. In addition, Defendant expected
14 Mr. Lopez to produce a better result because his family paid a lot of money for his
15 representation. Defendant testified that Mr. Navidad, a local, experienced criminal defense
16 attorney associated in this case with Mr. Lopez, told him the maximum sentence he could
17 receive is three years, while Mr. Lopez promised him a sentence of not more than 67 months.
18 Contrary to the plea agreement and colloquy with the Court, Defendants testified that Mr. Lopez
19 also promised him he would not have to serve the entire term even if he did receive a 67-month
20 sentence. Defendant claims his attorneys never told him that he could receive a life sentence,
21 although he admits the Court explained the maximum life sentence.

22 When Defendant found out that Mr. Lopez had not filed a notice of appeal, his wife
23 called Mr. Lopez. Mr. Lopez told Defendant's wife that he "did not have anything else to do
24 with the Defendant." Defendant does not know where his wife was when she called Mr. Lopez.

25 Defendant could not remember the dates on which he wrote letters to Mr. Lopez
26 regarding his failure to file a notice of appeal, but he testified that Mr. Lopez never responded
27 to his letters. Defendant could not remember whether he received other letters from Mr. Lopez.
28

On cross-examination, Defendant admitted that Mr. Navidad read him the entire Plea Agreement in Spanish, including the provision that required him to waive his appeal rights if he was sentenced in accordance with the Plea Agreement. He also admitted that he agreed to waive his appeal rights at the change of plea hearing even though the Court told him he could retain his appeal rights if he did not enter into the Plea Agreement. Defendant agreed that the Government never promised him a particular sentence, that the Court reminded him at sentencing that he had waived his appeal rights, and that he previously agreed his sentence was consistent with the Plea Agreement. Defendant denied that Mr. Lopez advised him not to appeal his sentence because he could get an even longer sentence if the Guidelines did not apply, but he admitted that the first time he wrote Mr. Lopez about his appeal was two months after sentencing. Defendant claimed that he was transferred to Safford FCI four or five days after sentencing. The record reflects that Defendant was transferred to Safford on November 5, 2004, nearly one month after sentencing.

**C.     Mr. Lopez's Testimony at the Hearing**

Mr. Lopez, a criminal defense attorney who is fluent in Spanish, has practiced law for over twenty-three years in several jurisdictions. After being admitted *pro hac vice* in this District, Mr. Lopez represented Defendant with the assistance of Alex Navidad and John DeLeon, who had previously represented a member of Defendant's family in Chicago.

Mr. Lopez discussed the Plea Agreement with the Defendant in Spanish on the telephone. In addition, Mr. Navidad discussed the Plea Agreement with the Defendant in Spanish in person. Based on these discussions, Defendant appeared to understand the Plea Agreement, including the waiver of his appeal rights if the sentence imposed was consistent with the Plea Agreement. Before he entered into the Plea Agreement, Mr. Lopez informed Defendant that, if the case did not settle, the Government intended to seek a superseding indictment against him that included a firearms charge.

Defendant was sentenced on October 8, 2004. (Dkt. 32.) Before sentencing, Mr. Lopez spoke with the Defendant in person. At no time before sentencing did the Defendant tell Mr. Lopez that he intended to file an appeal. The Defendant was aware that the mandatory

minimum sentence was ten years and that he could receive a life sentence. Mr. Lopez never told the Defendant that he would receive a 67 or an 87-month sentence.

The Defendant was sentenced to 135 months imprisonment. Before sentence was imposed, Mr. Lopez raised the Separation of Powers Argument because he wanted the Defendant to be able to raise that issue if Detwiler was affirmed on appeal. At sentencing, the Court explained that, if the Guidelines were held unconstitutional, Defendant's sentence "could never have gone below 120 months" and could go "substantially up." (Dkt. 46 at 30.) Because Detwiler was announced after the plea was negotiated, however, the Court held that Defendant could file an appeal or a collateral attack limited solely to the Separation of Powers issue. (Id.) When the Government requested an alternative sentence if the Guidelines were held unconstitutional, the Court estimated a sentence of 140 months. (Id. at 31.)

After sentencing, the Defendant did not tell Mr. Lopez to file an appeal. Instead, Mr. Lopez told the Defendant that he had waived his appellate rights and, even if he won on the Separation of Powers issue, he would likely receive a higher sentence. After he provided this advice, neither the Defendant nor anyone else directed Mr. Lopez to file an appeal on the Defendant's behalf. Moreover, before the time to file an appeal expired (October 30, 2004), Mr. Lopez did not receive notice from the Defendant or anyone else that the Defendant wanted him to file a notice of appeal on his behalf.

In January 2005, Mr. Lopez received an undated letter from the Defendant asking why he "did not . . . file a notice of appeal after [Defendant] had told [him] that [he] wanted to appeal the Court's judgment." The letter is written in English and is not signed. See Ex. 1. The letter shows the Defendant's return address as the Federal Correctional Institution in Safford, Arizona. A few days later, Mr. Lopez received a second letter from the Defendant dated January 17, 2005, which complained about the representation he received and asked about "previous letters" regarding filing "a notice to appeal as I had told you before." See Ex. 2. This letter is written in English and signed by the Defendant. Id.

On January 18, 2005, Mr. Lopez responded to the Defendant's letters by enclosing a copy of the Plea Agreement and reminding him that he waived his right to appeal by pleading

1 guilty. See Ex. 3. This letter also reminded the Defendant that the Court had explained the
2 waiver of his right to appeal on at least two occasions. Id.

3       Mr. Lopez received additional correspondence from the Defendant, including a letter
4 dated January 30, 2005, in which he requested copies of court transcripts and records in order
5 to appeal his conviction and sentence. See Ex. 4. This letter is written in English and states that
6 the Defendant has only "days left" to appeal. Id. On February 4, 2005, Mr. Lopez responded
7 that, although the Defendant had waived his right to file an appeal, he would try to order the
8 court transcripts. See Ex. 5.

9       In a letter dated February 13, 2005, the Defendant acknowledged that he had waived his
10 right to appeal, but blamed Mr. Lopez for advising him to continue with the sentencing hearing
11 and convincing him to accept culpability. This letter is written in English. See Ex. 6.

12       The Defendant and Mr. Lopez continued to exchange correspondence through March 9,
13 2005. None of the letters after February 13, 2005, refer to the Defendant's waiver of appeal
14 rights. See Exs. 7-11. In a March 1, 2005 letter, however, Mr. Lopez advised the Defendant
15 that he might be able to file a §2255 motion and offered to assist him in this regard. See Ex. 10.

16       During the case, Mr. Lopez spoke to the Defendant's wife, Amatta Vega, several times.
17 After the Defendant entered into the Plea Agreement but before sentencing, Mr. Lopez
18 explained the Plea Agreement to Ms. Vega, including the Defendant's waiver of appeal rights.
19 At sentencing, Mr. Lopez spoke to Ms. Vega but she did not tell him that the Defendant wanted
20 to appeal. After sentencing, Ms. Vega called Mr. Lopez to find out whether the Defendant's
21 common law wife signed the consent to search form and whether he had "confessed." Again
22 Ms. Vega did not inform Mr. Lopez that the Defendant wanted him to file a notice of appeal.

23       Mr. Lopez testified that, when he first received notice of the Defendant's intent to file
24 an appeal, the time to appeal had already expired. If the Defendant had told Mr. Lopez to file
25 an appeal, Mr. Lopez would have filed a notice of appeal and a motion to withdraw as counsel.

26       On cross-examination, Mr. Lopez stated that he has experience representing defendants
27 who waive their rights to appeal and then ask him to file a notice of appeal. Mr. Lopez also
28 admitted that including a waiver of appellate rights in a plea agreement is not a common

practice in the jurisdictions in which he practices. However, he was informed during this case that the Government attorneys in Arizona would not agree to a plea without a waiver of appellate rights. In Mr. Lopez's opinion, an appeal would not benefit the Defendant because (1) "sanctions" could result from filing an appeal in violation of the Plea Agreement and (2) the Defendant could receive a higher sentence, including life imprisonment, if the Guidelines were held unconstitutional. For both reasons, and because he believed the Plea Agreement was the best deal the Defendant could receive without cooperating, Mr. Lopez advised the Defendant not to appeal the judgment. Mr. Lopez denied receiving $50,000 to represent the Defendant, as Defendant suggested in his letters. See Exs. 4, 6, 8.

**D.      The Court's Credibility Determination**

Based on the testimony of Mr. Lopez and the Defendant, as well as the Court's observations of both witnesses, including their demeanor, candor, and lack of candor, the Court finds the Defendant is less credible than Mr. Lopez on the issue of whether he directed Mr. Lopez to file a notice of appeal. The Court credits Mr. Lopez's testimony that the Defendant did not instruct him to file a notice of appeal until long after the ten-day period to file a notice of appeal had expired. Specifically, the Court finds that the first time Mr. Lopez learned of the Defendant's desire to appeal the judgment was in January 2005, when he received the Defendant's unsigned letter asking why a notice of appeal had not been filed. See Ex. 1. Because the Defendant did not instruct Mr. Lopez to file a notice of appeal before the time to appeal expired, Defendant's § 2255 Motion will be denied. The Court's credibility determination is based on the following reasons.

First, the record renders the Defendant's testimony concerning his request that Mr. Lopez file an appeal highly unlikely. The record, including at least one of the Defendant's letters, confirms that he was aware of his agreement not to file an appeal (except on the Separation of Powers issue) if sentencing was in accordance with the Plea Agreement. See Dkts. 45 at 12-13, 17-18; 46 at 19-21, 28-31; Ex. 6 ("I understand what you mean by, when you say that I waive my rights"). Given the Defendant's understanding of the waiver, the Court does not find credible his assertion that, after sentencing, he told Mr. Lopez, "I need you to file my appeal."

In view of the Defendant's lack of knowledge of the American justice system and the detailed discussions of his appeal waiver at the change of plea hearing and sentencing (see dkt. 46 at 19-21, 29-32), the Court finds that the Defendant would have more likely *asked Mr. Lopez whether he could file an appeal or not requested that an appeal be filed.* In addition, the Court does not find credible the Defendant's testimony that, after he told Mr. Lopez to file an appeal, Mr. Lopez responded, "Okay. Call me." The record confirms Mr. Lopez's testimony that even a successful appeal on the Guidelines issue would not likely be beneficial. Therefore, if the Defendant had actually directed Mr. Lopez to file an appeal, the Court finds that Mr. Lopez would more likely have explained the risks of appealing, rather than saying, "Okay. Call me."

Second, unlike the Defendant's testimony, which does not mesh with undisputed facts set forth in the record, the Court finds Mr. Lopez's version of the events after sentencing consistent with circumstances confirmed by the record, including the Defendant's understanding of the appellate waiver (dkts. 45 at 12-13, 17-18; 46 at 19-21, 28-32), the risk of taking an appeal on the Guidelines issue (dkt. 46 at 30), and his long overdue letters accusing Mr. Lopez of failing to file an appeal (ex. 1). The Defendant's admission that he did not prepare the letters, as well as his inability to read English, further detract from the version of events set forth in his letters, including that he had previously told Mr. Lopez he "wanted to appeal the Court's judgment." Ex. 1. Mr. Lopez's letters, by contrast, are consistent with his testimony that the Defendant *understood* his waiver of appellate rights except on an issue that would most likely not help him and, as a result, never directed him to file a notice of appeal. See Exs. 3,5.

Third, Defendant's apparent lack of candor on facts not significant to the resolution of his IAC claim casts doubt on his testimony as a whole. For example, letters admitted at the Hearing do not support Defendant's testimony that, after he found out Mr. Lopez failed to file a notice of appeal, his wife called Mr. Lopez, who told her that he "did not have anything else to do with the Defendant." The record confirms that, as of January 30, 2005, Defendant was still under the impression that he could appeal the Court's judgment and his later letters do not substantiate the assertion that Mr. Lopez's failure to file a notice of appeal was significant

enough to have his wife call Mr. Lopez. See Ex. 4 ("I am asking for . . . transcripts . . . because I am going to appeal my conviction and possible [sic] my sentence"). Moreover, Mr. Lopez's letters to Defendant through March 1, 2005, demonstrate his continued willingness to assist the Defendant, thereby casting doubt on Defendant's testimony that his wife was told Mr. Lopez "did not have anything else to do with the Defendant." See Exs. 5, 7, 9, 10. Given the insignificance of this fact in the resolution of this matter, the Court is troubled by Defendant's apparent lack of candor on the issue.

Fourth, to an uneducated lay person like Defendant, it would seem that any admission of waiving his right to appeal would foreclose an appeal at this stage of the case when, in fact, the law renders this fact inconsequential. See Sandoval-Lopez, 409 F.3d at 1197 (the right to effective assistance of counsel requires that an attorney, when specifically requested to do so by the defendant, file an appeal even if doing so would be contrary to the plea agreement or otherwise frivolous). As a result, the Court finds Defendant's memory of events that show his right to appeal a single issue particularly convenient in view of his failure to remember events that show he waived his appeal rights. For example, the record confirms that, at the change of plea hearing, Defendant admitted understanding his waiver of appellate rights because, in exchange for pleading guilty and the waiver, the Government had made certain concessions. (Dkt. 45 at 12-13, 17-18.) Likewise, at sentencing, counsel for both parties and the Court engaged in significant discussions about the Defendant's appellate waiver. (Dkt. 46 at 19-21, 28-32.) At the instant Hearing, however, Defendant denied understanding that he had agreed to give up his appeal rights and blamed this lack of understanding on Mr. Lopez. Defendant also denied remembering any discussions at sentencing about having waived his appeal rights. Defendant testified that Mr. Lopez never responded to his letters regarding the appeal, but the record confirms that Mr. Lopez did respond by telling Defendant that he has waived his appeal rights. See Exs. 3, 5. Defendant did remember, however, that at sentencing the Court told him he was permitted to file an appeal on a single issue. Again, given the insignificance of these facts to the resolution of Defendant's IAC claim, the Court is troubled by what appears to be purposeful untruthful testimony.

- 11 -

Fifth, the Court is troubled by several other inconsistencies in Defendant's testimony. At the Hearing, Defendant testified that he was not satisfied with Mr. Lopez's representation because he failed to keep Defendant informed about the status of his case. Notwithstanding this assertion, Defendant admitted knowing that he was facing a mandatory minimum sentence of ten years and that the Government could seek to add a weapons possession charge to the Indictment if the case did not settle. Similarly, Defendant's testimony at the Hearing that he was surprised by the sentence he received because it did not comply with the Plea Agreement contradicts his earlier agreement that he had been sentenced in accordance with the terms of the Plea Agreement. See Dkt. 46 at 27-28.  At one point during the Hearing Defendant testified that he called Mr. Lopez twice on the day he was sentenced, but he later admitted not knowing whether Mr. Lopez went back to Chicago immediately after sentencing. The only reasonable inferences from Defendant's inconsistent testimony are that he has either chosen not to be truthful or cannot remember what happened.

Sixth, Defendant's previous failure to recount the same events that he testified to at the Hearing renders his Hearing testimony extremely suspect.  In his February 10, 2005 "Motion to withdraw the plea, or for breach of contract, or to reinforce the agreement," Defendant does not state that he told Mr. Lopez to file an appeal after sentencing or that Mr. Lopez agreed to do so. See Dkt. 36. Instead, he contends only that his wife told Mr. Lopez to file a notice of appeal. Id. at 3. Even an inexperienced lay person would recognize the significance of any direct request by Defendant that Mr. Lopez file an appeal on his behalf. Thus, if Defendant had actually directed Mr. Lopez to file an appeal, it is highly unlikely he would have left that important fact out of his February 2005 motion.

**CONCLUSION**

For the reasons outlined above, the Court does not credit Defendant's assertion that he directed Mr. Lopez to file an appeal on his behalf before the time to file a notice of appeal expired. Accordingly,

**IT IS HEREBY ORDERED DENYING** Defendant's 28 U.S.C. § 2255 Motion as to Claim Three.  (Dkt. 47.)

- 12 -

In an earlier Order, the Court denied Claims One and Two of Defendant's 28 U.S.C. § 2255 Motion. (Dkt. 47.) Therefore, **IT IS FURTHER ORDERED** that the Clerk of Court shall enter Judgment accordingly in this matter.

DATED this 5th day of March, 2007.

Stephen M. McNamee
United States District Judge